454 A.2d 75

**William BOLAND, Appellant,**

**v.**

**Mary Pamela LESKA.**

Superior Court of Pennsylvania.

Submitted June 21, 1982.

Filed Dec. 17, 1982.

Petition for Allowance of Appeal Denied March 22, 1983.

Henry J. Lunardi, Philadelphia, for appellant.

Jon C. Sirlin, Philadelphia, for appellee.

Before WICKERSHAM, McEWEN and LIPEZ, JJ.

WICKERSHAM, Judge:

This is an appeal from an order of the Philadelphia County Court of Common Pleas, which awarded custody of Sean and Michael Boland to their mother, appellee Mary Pamela Leska. The pertinent facts and procedural history are as follows.[1]

Mary Pamela Leska and William Boland were married in 1964 and divorced in March of 1976. During their marriage two children were born to them; Sean in 1971, and Michael in 1975. At the time of their divorce it was agreed between them that Mary Pamela Leska should have custody of the two boys. Both parents subsequently remarried; Mary to Gerald Leska, and William to Mary Rose Cunningham Boland.

On June 14, 1977, William Boland went to the Leska home, examined the boys and discovered some bruises on Sean: he then took Sean to the Children's Hospital of Philadelphia where Sean was examined by Dr. Steven Ludwig. Dr. Ludwig thought the bruises might be the result of child abuse and so informed the local child protective services agency. William Boland took the boys to his home and refused to return them to the custody of their mother.

---

**1.** "[T]he order awarding custody is a final order, and, therefore, is the order from which any appeal to this court is to be taken...." *In re Custody of Frank,* 283 Pa.Super. 229, 233, 423 A.2d 1229, 1232 (1980). See also *Ray v. Ray,* 293 Pa.Super. 216, 438 A.2d 614 (1981) (appeal from order granting custody permitted.)

Here, an order awarding custody of the children to appellee Mary Pamela Leska was entered on August 1, 1980. An appeal from the order was filed on August 27, 1980. This appeal is timely and proper.

Mary Pamela Leska subsequently filed a petition for a writ of habeas corpus seeking the return of the boys to her custody. On September 26, 1977, after a hearing, Judge William J. Lederer ordered the boys returned temporarily to their mother's custody. Numerous hearings were subsequently held at which many witnesses testified as to the boys' abilities, progress and best interests. On August 1, 1980, Judge Lederer issued an opinion and order awarding custody of the boys to Mary Pamela Leska except on certain holidays and vacation periods when their father would have custody. This appeal followed.

Appellant Boland frames the first question involved as follows:

Did the Hearing Court Err as a Matter of Law by Refusing to Consider the Testimony of Numerous Witnesses for Appellant.

Brief for Appellant at 3.

■ Boland asserts that the hearing court did not consider the evidence of several witnesses based on the following quotation from Judge Lederer's opinion:

The Court did not consider the testimony of witnesses Joan Taylor, Rosalind Ritchie, Sandra Calobrisi, Lois Roush, Reverend John Freeman and Dr. Anthony Pillegi on the issue of fitness or abusive conduct particularly germane or probative and was not persuaded in any direction by any of it.

Lower ct. op. at 75.

The lower court did not refuse to consider this evidence, as Boland asserts, but did consider it and did not find it particularly helpful.

"To constitute capricious disbelief [of a witness] there must be a willful deliberate disbelief of an apparently trustworthy witness, whose testimony, one of ordinary intelligence could not possibly challenge or entertain the slightest doubt as to its truth." *Giordano v. Bianco*, 210 Pa.Super. 469, 473, 233 A.2d 623, 625 (1967).

Here, there is no evidence of such capricious disbelief of witnesses by the hearing court judge. The witnesses allegedly ignored by the hearing court were able to provide some information concerning the children, however, none of these witnesses provided information particularly germane to custody. The hearing court was correct in viewing the witnesses' testimony as not particularly helpful.

■ Appellant Boland frames the second issue involved as follows:

Did the Hearing Court Manifest Prejudice, Bias, and Ill Will Toward Appellant by Summarily Returning Sean and Michael Boland to the Leskas on September 26, 1977.

Brief for Appellant at 3.

Boland asserts that the hearing court displayed a bias against him by ordering that the children be returned to their mother based on the record before it on September 26, 1977.

The basis of Boland's claim that he should have custody of the two boys is that they were allegedly abused by Gerald Leska. The lower court concluded, in its findings of fact (Reproduced Record at 84–94), that the bruises and abrasions incurred by the boys were not the result of child abuse. As such allegations were the only basis for Boland's claim, and the hearing court concluded no child abuse occurred, it is difficult to see how the hearing court abused its discretion in returning the children to their mother, who had custody of them before the allegations were made.

Appellant Boland frames the third issue involved as follows:

Did the Hearing Court Abuse its Discretion and Err as a Matter of Law in Evaluating Appellant's Evidence of Child Abuse.

Brief for Appellant at 3.

■ Although an appellate court is not compelled to accept the hearing court's determination in a child custody dispute, it will defer to such determination, absent an abuse of discretion, if the hearing court judge has thoroughly

investigated the facts, that investigation is documented by a complete record and a comprehensive analysis is contained in his opinion.[2] *Commonwealth ex rel. Montgomery v. Montgomery,* 296 Pa.Super. 325, 328, 442 A.2d 791, 793 (1982). Here, the hearing court, in a ninety-seven page opinion, thoroughly reviewed the testimony concerning the alleged abuse of the two boys and concluded that the relatively minor injuries they had receive were generally the result of an assortment of typical childhood accidents and occurrences. Lower ct. op. at 61–71.

Two incidents, one resulting in a bruise on Sean's neck and the other involving the slapping of Sean, were the subject of further consideration by the hearing court. The court found that the neck bruise resulted from Gerald Leska grabbing Sean by his pajama top as a result of his frustration at Sean's refusal to answer his mother's questions concerning a missing key. There was no intent to cause a bruise to Sean's neck or otherwise injure him;

**2.** While this standard of review has been criticized in *Robert H.H. v. May L.H.,* 293 Pa.Super. 431, 434 n. 1, 439 A.2d 187, 189 n. 1 (1981), it has been cited with approval in a later case, *In re Custody of J.S.S.,* 298 Pa.Super. 428, 444 A.2d 1251 (1982). In any event, our independent review of the record confirms the findings of the hearing court.

The concurring opinion criticizes the use of the standard of review enunciated in *Commonwealth ex rel. Montgomery v. Montgomery,* supra. The Pennsylvania Supreme Court has never specifically ruled on the standard, however, and we note that while the standard has been criticized, the cases following it have not been overruled or reversed on that basis.

We emphasize that under an independent review of the record, conducted in conformance with the standard advocated in the concurrence, we reach the same conclusions reached by the trial court, and so conclude for the same reasons expressed below.

It is difficult to conceive of circumstances in which the use of one standard or the other would lead to a different result. Under both standards the lower court is the finder of fact. It would be impossible for the hearing court to write a *comprehensive* analysis after a *thorough* investigation documented by a *complete* record that did not reach the same conclusions as an independent review by an appellate court: if the hearing court did reach a different conclusion in a case than the reviewing court it would only indicate that the hearing court's investigation was not thorough enough, or that its analysis was not comprehensive enough, or that the record was not complete enough.

Leska merely sought to show Sean that he was angry. The bruise was minor and required no treatment other than usual skin care. The slapping incident also occurred as the result of disciplinary measures. Sean had lost a sweater and Gerald Leska slapped him once on the face. Leska immediately apologized to Sean and acknowledged during his testimony that the slap was an inappropriate punishment. No observable physical injury resulted from the slap.

The hearing court concluded that neither incident constituted child abuse. We agree. Parents or guardians may use corporal punishment to discipline their children so long as the force used is not designed or known to create a substantial risk of death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation. 18 Pa.C.S. § 509(1); *see also Commonwealth v. Moore,* 261 Pa.Super. 92, 395 A.2d 1328 (1978). At some point, however, permissible corporal punishment no longer is such, but becomes malicious abuse; this point is reached when the parent or guardian acts with malicious intent in so punishing the child. *Commonwealth v. Kramer,* 247 Pa.Super. 1, 7, 371 A.2d 1008, 1011 (1977).

Presently, we find no evidence that Gerald Leska's motives in administering corporal punishment to Sean were improper. Both instances considered closely followed errant behavior by the child and neither involved extreme force or was part of a repeated course of unwarranted punishment. There was no abuse of discretion by the hearing court.

■ Appellant Boland frames his final issue as follows: Did the Hearing Court Abuse its Discretion by delaying its decision for two years.

Brief for Appellant at 3.

In addressing this issue we note that the hearing court reinterviewed Sean [3] on March 1, 1980, and subsequently

---

3. Michael was not interviewed because he is handicapped and unable to speak.

issued its custody order and opinion on August 1, 1980. No new evidence of potential abuse of the boys, or any other evidence relevant to custody, was advanced during the period Boland complains of. We find no abuse of discretion.

■ The most important concern in any child custody case is the best interest and permanent welfare of the child. An appellate court must, in a custody matter, exercise an independent judgment based on the evidence and make such an order as right and justice dictate. *Commonwealth ex rel. Pierce v. Pierce*, 493 Pa. 292, 426 A.2d 555 (1981).

■ We agree with the hearing court that both the Bolands and the Leskas have many fine qualities and that either household would be an excellent place for the boys to reside. A stable relationship with an established parental figure and a known physical environment is important to the development of a child. In deciding who should have custody of a child it is always essential to consider how long the child has spent with each of the parties. *In the Interest of Tremayne Quame Idress R.*, 286 Pa.Super. 480, 493, 429 A.2d 40, 47 (1981). "[T]his court has long recognized that the removal of a young child from his environment is a factor which bears on its emotional well being .... Therefore, continued residence of children with one parent may be controlling." *Hugo v. Hugo*, 288 Pa.Super. 1, 6, 430 A.2d 1183, 1185 (1981). *See also In re Custody of Temos*, 304 Pa.Super. 82, 450 A.2d 111 (1982) (if custodial parent has taken care of child properly, court may surmise he will continue to do so) (*Id.*, 304 Pa.Superior 82, 450 A.2d 111).

■ Both boys have lived with their mother since 1975, except for the short period in 1977 when their father took them. We agree with the hearing court that they have been properly cared for during this period and that to take them from their mother would be unnecessarily emotionally

178

disruptive to them. It is in the best interests of the boys to remain in their current custody situation.

Order affirmed.

LIPEZ, J., files a concurring opinion.

LIPEZ, Judge, concurring:

I agree generally with the majority's analysis, and specifically with their conclusion that it is in the boys' best interests that they remain in the custody of their mother. However, their use of an abuse of discretion standard (which appears in a number of this court's opinions,[1] as the majority opinion demonstrates) is incompatible with the broadest type of review and independent judgment effecting a just result mandated by a whole host of Supreme Court decisions. *See, e.g., Commonwealth ex rel. Pierce v. Pierce*, 493 Pa. 292, 426 A.2d 555 (1981); *Commonwealth ex rel. Bendrick v. White*, 403 Pa. 55, 169 A.2d 69 (1961). ("It is our duty not simply to determine from the record whether the trial court has abused its discretion but to examine all the evidence and render an independent determination.") *See also* the rejection of the abuse standard in: panel opinion by Spaeth, J. in *L.D. v. B.D.*, 291 Pa.Super. 589, 436 A.2d 657 (1981); concurring opinions by Spaeth, J. in *Commonwealth ex rel. Montgomery v. Montgomery*, 296 Pa.Super. 325, 442 A.2d 791 (1982) and *Commonwealth ex rel. Berman v. Berman*, 289 Pa.Super. 91, 432 A.2d 1066 (1981); concurring opinion by Hoffman, J. in *In re Arnold*, 286 Pa.Super. 171, 428 A.2d 627 (1981); panel opinion by Brosky, J., in *Robert H.H. v. May L.H.*, 293 Pa.Super. 431, 439 A.2d 187 (1981). Nevertheless, the majority here expressly states that their independent review of the record confirms the finding of the hearing court, and I agree.

1. I too joined in one such opinion, *In re custody of J.S.S.*, 298 Pa.Super. 428, 444 A.2d 1251 (1982). I now recant my error.